'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCON 3PL, INC. a California corporation, | CV 20-02523-RSWL-PVCx |
| Plaintiff, | |
| v. | **ORDER re: MOTION TO DISMISS** [34] |
| SUN GROUP PARTNERS LLC, a California limited liability company; GLENN SANDS, an individual; BRENT SANDS, an individual; DOES 1 THROUGH 10, INCLUSIVE | |
| Defendants. | |

    Plaintiff Alcon 3PL, Inc. ("Plaintiff") brought the
instant Action against Defendants Sun Group Partners,
LLC ("Defendant Sun Group"), and Glenn and Brent Sands
("Individual Defendants") alleging breach of contract,
open book account, account stated, and quantum meruit
for services rendered.  Currently before the Court is

1

Defendant's Motion to Dismiss for Lack of Personal
Jurisdiction and Failure to State a Claim. [34]
("Motion").

Having reviewed all papers submitted pertaining to
this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**
the Court **GRANTS** Defendants' Motion to Dismiss claims
against Individual Defendants and **DENY** Defendants'
Motion to Dismiss claims against Defendant Sun Group

**I.   BACKGROUND**

**A.   Factual Background**

Plaintiff is a corporation with its principal place
of business in, and incorporated under the laws of,
California.  First Am. Compl. ("FAC") ¶ 2, ECF No. 1.
Defendant Sun Group is a limited liability company with
its principal place of business in Palm Beach Gardens,
Florida.  Id. ¶ 3.  Individual Defendants are citizens
of Florida, who are, and at all times mentioned were,
the directors, managers, and/or members of Defendant Sun
Group.  Id. ¶ 6.

Plaintiff alleges that each Individual Defendant
was the agent, joint venture, and/or employee of every
other Defendant, and acted within the course and scope
of such agency, with the permission and consent of each
of the other Defendants.  Id. ¶ 8.  Plaintiff claims
that Defendant Sun Group was a mere shell,
instrumentality, and conduit through which Individual
Defendants carried on business.  Id. ¶ 3.  Plaintiff
states that Defendant Sun Group is controlled,

dominated, and operated by such Defendants.  Id. ¶ 4.
Indeed, Plaintiff claims that the activities and
business of Defendant Sun Group were carried out without
abiding by corporate formalities, including "[not]
holding annual meetings, and without keeping records or
minutes of any proceedings, or maintain[ing] written
solutions."  Id.

     In late 2020 and early 2021, Individual Defendants
contacted Plaintiff about providing warehousing services
to Defendant Sun Group.  Id. ¶ 14.  The Parties executed
a contract and agreed that Plaintiff would receive the
sum of $38,592.00 per month for its warehousing
services.  Id.  Starting on May 4, 2021, Defendants
allegedly stopped paying the monthly sum and have not
paid since.  Id. ¶ 15.  Plaintiff contends that
Defendants now owe Plaintiff a principal balance of at
least $452,992.  Id.  Plaintiff has performed all the
terms and conditions of the contract, except for
provisions that have been excused by Defendants'
conduct. Id. ¶ 17.

**B.   Procedural Background**

     Plaintiff filed its Complaint [1] on April 14, 2022.
Defendant then filed a Motion to Dismiss [23] on
September 1, 2022, which the Court granted on
November 17, 2022.  Defendants filed their First Amended
Complaint [33] on December 14, 2022, and Defendants
filed the instant Motion [34] on December 28, 2022.
Plaintiff opposed [41] the Motion on January 17, 2023.

# II.   DISCUSSION

**A.   <u>Legal Standard</u>**

1.   <u>12(b)(2) Motion</u>

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).

Where the motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" to survive dismissal.  <u>Id.</u>  (internal quotation marks omitted).  Absent an evidentiary hearing this court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." <u>Caruth v. Int'l Psychoanalytical Ass'n</u>, 59 F.3d 126, 127-28 (9th Cir. 1995); <u>Boschetto v. Hansing</u>, 539 F.3d 1011 (9th Cir. 2008).  To make a prima facie showing, the plaintiff must allege facts that, if true, would support a finding of jurisdiction.  <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995).  Although the plaintiff cannot rely on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true and conflicts between statements contained in the parties' affidavits must be resolved in

1  the plaintiff's favor.  <u>Schwarzenegger</u>, 374 F.3d at 800.

2      2.  <u>12(b)(6) Motion</u>

3      Federal Rule of Civil Procedure ("Rule") 12(b)(6)

4  allows a party to move for dismissal of one or more

5  claims if the pleading fails to state a claim upon which

6  relief can be granted.  A complaint must "contain

7  sufficient factual matter, accepted as true, to state a

8  claim to relief that is plausible on its face."

9  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation

10  omitted).  Dismissal is warranted for a "lack of a

11  cognizable legal theory or the absence of sufficient

12  facts alleged under a cognizable legal theory."

13  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699

14  (9th Cir. 1988) (citation omitted).

15      In ruling on a 12(b)(6) motion, a court may

16  generally consider only allegations contained in the

17  pleadings, exhibits attached to the complaint, and

18  matters properly subject to judicial notice.  <u>Swartz v.</u>

19  <u>KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007).  A court

20  must presume all factual allegations of the complaint to

21  be true and draw all reasonable inferences in favor of

22  the non-moving party.  <u>Klarfeld v. United States</u>,

23  944 F.2d 583, 585 (9th Cir. 1991).  "[T]he issue is not

24  whether a plaintiff will ultimately prevail but whether

25  the claimant is entitled to offer evidence to support

26  the claims."  <u>Jackson v. Birmingham Bd. of Educ.</u>,

27  544 U.S. 167, 184 (2005) (quoting <u>Scheuer v. Rhodes</u>,

28  416 U.S. 232, 236 (1974)).  While a complaint need not

contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

3.   Alter Ego

The alter ego doctrine "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests.  In certain circumstances, the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation."  Mesler v. Bragg Management Co., 702 P.2d 601, 611 (Cal. 1985).  The purpose of the doctrine is to bypass the corporate entity in order to avoid injustice.  Its "essence . . . is that justice be done [,] . . . [and t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require."  Id. at 602; see also Roman Cath. Archbishop of San Francisco v. Superior Court, Cal. Rptr. 338, 344 (Ct. App. 1971) ("The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable

owner of a corporation will be held liable for the actions of the corporation."

Before the doctrine can be invoked, two elements must be alleged. "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." Sonora Diamond Corp. v. Superior Court, 99 Cal. Rptr. 2d 824, 827 (Ct. App. 2000). "Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." Id.; see also Mesler, 702 P.2d at 601 ("There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case.").

A plaintiff can plead a number of different factors to show unity of interest. Among the factors to be considered are: (1) commingling of funds and other assets of the two entities; (2) the holding out by one entity that it is liable for the debts of the other; (3) identical equitable ownership in the two entities; (4) use of the same offices and employees; (5) and use of one as a mere shell or conduit for the affairs of the other. Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002).

///

///

**B.   Analysis**

1     1.  Alter Ego Liability

2          To invoke the alter ego doctrine, a plaintiff must

3     allege that (1) there was a unity of ownership between

4     the corporation and its equitable owner that the

5     separate personalities of the corporation and the

6     shareholder do not really exist, and (2) there will be

7     an inequitable result if the acts in question are

8     treated as those of the corporation alone.  Gerritsen v.

9     Warner Bros. Ent. Inc., 116 F. Supp. 3d 1104, 1136

10    (C.D. Cal. 2015).  Conclusory allegations of "alter ego"

11    status are insufficient to state a claim.  Id.  Rather,

12    a plaintiff must allege specific facts supporting both

13    necessary elements.  Id.

14         "The first prong of the alter ego test . . . has

15    alternatively been stated as requiring a showing that

16    the parent controls the subsidiary to such a degree as

17    to render the latter the mere instrumentality of the

18    former."  NetApp, Inc. v. Nimble Storage, Inc.,

19    No. 5:13-CV-05058 LHK (HRL), 2015 WL 400251 (N.D. Cal.

20    Jan 29, 2015).  Specifically, when a parent dictates

21    every facet of the business ranging from broad policy

22    decisions to routine day-to-day matters, it establishes

23    the first prong.  Gerritsen, 116 F. Supp. 3d at 1136.

24         In Ultratech, Inc. v. Ensure NanoTech (Beijing),

25    Inc., the plaintiff was able to satisfy the unity of

26    interest element by alleging that an individual was "the

27    president, principal, and sole owner of Start Science,

28    that he controlled aspects of Start Science's business

and day-to-day operations, and that he negotiated and signed the sales agreement." 108 F. Supp. 3d 816, 826 (N.D. Cal. 2015).

Conversely, in <u>Holly v. Alta Newport Hospital, Inc.</u>, the plaintiff's allegations that a non-hospital defendant was "doing business as a hospital . . . owned and operated and was responsible for the administration, operation and business conducted by the Hospital" were "devoid of any factual allegations" that would support a finding of a unity of interest. No. 2:19-CV-07496-ODW (MRWx), 2020 WL 1853308, at *3 (C.D. Cal. Apr. 10, 2020).

Here, Plaintiff fails to allege sufficient factual matter to satisfy the unity of ownership element. <u>See generally</u> FAC. Instead, Plaintiff simply made vague statements regarding the actions and responsibilities of Individual Defendants. FAC at 3:12-5:16. For example, Plaintiff stated that "[Defendant] Sun Group is . . . a mere . . . instrumentality for individual manipulations . . . through which such [Individual] Defendants carried on business in the name of [Defendant] Sun Group while exercising complete control and dominance" but failed to offer any specific facts as to what activities and behavior of Individual Defendants constituted "carrying out business in the name of [Defendant] Sun Group while exercising complete control." <u>Id.</u>

Additionally, Plaintiff alleges that "[Defendant] Sun Group was conceived, intended, and used by such

Defendants as a device to avoid liability" without
alleging any facts about what Individual Defendants did
to avoid liability.  Id.  Plaintiff states that
Defendant Sun Group was operated and controlled by
Individual Defendants and that it "didn't abide by
corporate formalities," but did not allege specific
facts as to how Defendant Sun Group failed to abide by
corporate formalities.  Id.  Instead, Plaintiff simply
claims that Defendant Sun Group was "[not] holding
annual meetings, not keeping minutes, not maintaining
written solutions, or issuance of stock" without
offering facts as to how Defendant Sun Group failed to
abide by the listed formalities.  Id.

Plaintiff does not offer any specific facts about
Individual Defendants' actions while conducting business
for Sun Group.  Id.  Instead, Plaintiff recites vague
statements and conclusory allegations.  Id.  Here,
unlike in Ultratech, where it was alleged that the
defendant was the sole owner of a corporation and
controlled all aspects of its business, Plaintiff fails
to offer any specific facts about the Individual
Defendants' title or responsibilities within Defendant
Sun Group.  Id.

Also, like in Holly, where the allegations were
"devoid of factual matter" and simply stated a
corporation was owned, controlled, and doing business as
another, Plaintiff simply states that Sun Group was
"controlled, dominated and operated" by Individual

1  Defendants without offering any facts to support these
2  claims.  Id.  In sum, Plaintiff has failed to
3  sufficiently establish a unity of ownership between
4  Defendant Sun Group and Individual Defendants.

5       Therefore, the Court concludes that Defendant Sun
6  Group is not the alter ego of Individual Defendants.

7       2.  Personal Jurisdiction

8       Under Rule 12(b), once a defendant files a motion
9  to dismiss for lack of personal jurisdiction, the
10  plaintiff must bear the burden of proof to establish
11  jurisdiction.  Schwarzenegger, 374 F.3d at 800.  For a
12  nonresident defendant to be subject to jurisdiction
13  consistent with due process, that defendant must have
14  "minimum contacts" with the forum and those contacts
15  must be substantial enough to not offend "traditional
16  notions of fair play and substantial justice."
17  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066,
18  1073 (9th Cir. 2011) (internal citation omitted).

19       Specific jurisdiction is analyzed under a three-
20  prong test which is stated as follows: (1) the non-
21  resident defendant must purposefully direct his
22  activities to, or consummate some transaction with, the
23  forum or resident thereof, or perform such act by which
24  he purposefully avails himself of the privileges of that
25  forum; (2) the claim must arise out of the forum related
26  activities; and (3) the exercise of jurisdiction must be
27  reasonable in that it must comport with the notions of
28  fair play and substantial justice.  Id.  The plaintiff

bears the burden of satisfying the first two prongs of
the test and if the plaintiff fails to establish either
prong, then personal jurisdiction is not established.
Schwarzenegger, 374 F.3d at 802.  However, if the
plaintiff succeeds in proving the first two elements of
the test, then the burden shifts to the defendant to
present a "compelling case" that the exercise of
jurisdiction would be unreasonable.  Id.

          a.   Individual Defendants

     Even if there was alter ego liability, there is no
personal jurisdiction over Individual Defendants.
Plaintiff alleges that Individual Defendants have
sufficient minimum contacts to support the Court's
exercise of personal jurisdiction over them.  See
generally FAC.  However, both Individual Defendants are
citizens of Florida, reside in Florida, and did not
physically enter California in relation to this dispute.
Id.

     Plaintiff points to Individual Defendants actions
directed towards California as evidence of minimum
contacts, but Individual Defendants simply arranged for
warehousing services on behalf of Defendant Sun Group.
Id.  "The fiduciary shield doctrine buffers corporate
officers from personal jurisdiction when their official
duties were their only contact with a forum state."
ProSource Discounts, Inc. v. Dye, No. 2:19-CV-00489-AB-
JC, 2019 WL 6729702 (C.D. Cal. July 23, 2019) (citation
omitted).  As mentioned earlier, Individual Defendants

only directed actions towards California while acting in their corporate capacity as agents for Defendant Sun Group.  FAC 5:21-7:16.

Plaintiff asserts that Defendant Sun Group is the alter ego of Individual Defendants and thus, Individual Defendants should be liable for Defendant Sun Group's actions directed toward California.  FAC ¶¶ 3-5. However, as discussed above, Plaintiff failed to establish the first element necessary to invoke the alter ego doctrine and therefore, the actions of Defendant Sun Group cannot be imputed onto Individual Defendants.  Id.

Thus, Individual Defendants' actions do not satisfy the first prong of the Court's specific jurisdiction analysis and the Court does not exercise personal jurisdiction over Individual Defendants.

Therefore, the Court **GRANTS** the motion to dismiss as to the claims against Individual Defendants Glenn Sands and Brett Sands.

b.   Defendant Sun Group

Plaintiff asserts that the Court should exercise personal jurisdiction over Defendant Sun Group because it has sufficient "minimum contacts" with the state of California.  The same specific personal jurisdiction test that the Court applied for the Individual Defendants is applicable here.

///

///

i.  First Prong of the Minimum Contacts
Analysis

The first prong of this test states: "the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform such act by which he purposefully avails himself of the privileges of that forum." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (internal citation omitted).

Here, Defendant Sun Group entered into an agreement with Plaintiff, a California corporation, to use Plaintiff's warehousing services.  FAC ¶¶ 5-7.
Defendant Sun Group sent their materials for storage to Plaintiff, and Defendant Sun Group directed Plaintiff to take the materials for storage in Plaintiff's warehouse located in the City of Commerce, California.  Id.

Defendant argues that because Defendant Sun Group did not originally plan to use a warehouse in California, its actions do not constitute "purposeful availment" for the purposes of the first prong.  Mot. 12:16-13:15.  This logic fails because Defendant Sun Group ultimately used a warehouse located in California and owned by a California corporation.  FAC ¶¶ 5-7.
Thus, despite its reason for doing so, Defendant Sun Group purposefully availed itself of the privileges of California.  FAC 5:21-7:16.  See Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir.

14

2017) (To support the exercise of personal jurisdiction "the relationship between the nonresident defendant, forum and litigation must arise

### ii. Second Prong of the Minimum Contacts Analysis

The second prong of the specific personal jurisdiction analysis states that the claim must arise from the forum-related activities. <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1073 (9th Cir. 2011). Here, Plaintiff's breach of contract claim arises from Defendant Sun Group storing its materials at Plaintiff's warehouse in California. <u>See generally</u> FAC. Plaintiff alleges that Defendant Sun Group failed to continue to pay the agreed upon monthly payment for the storage of Defendant Sun Group's materials in California. <u>Id.</u> Therefore, this Action arises from Defendant Sun Group's forum-related activities and the second prong of the specific jurisdiction analysis is satisfied.

### iii. Third Prong of the Minimum Contacts Analysis

Since the first two prongs of the specific personal jurisdiction analysis have been satisfied, the burden of proof shifts to Defendant Sun Group to prove that the exercise of jurisdiction would be unreasonable. <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1073 (9th Cir. 2011). Here, Defendant Sun Group argues that since it originally intended to warehouse the

materials in another state but was allegedly unable to do so due to the COVID-19 pandemic, holding it responsible for a "once in a century global economic disruption [would be] unprecedented and unreasonable." Mot. 14:17-24.  Defendant Sun Group contends it was "pure happenstance" that it used a warehouse in California to store its materials, but the unplanned nature of its activities in the forum state does not necessarily excuse it from facing litigation in California.  Id.  Instead, the Court must assess the following factors to determine the reasonableness of exercising jurisdiction.

There are seven factors that guide the Court's inquiry into whether the exercise of jurisdiction is reasonable and does not offend the "notions of fair play."  Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 983-84 (9th Cir. 2021).  The factors are as follows: (1) the extent of the defendant's purposeful involvement with the forum state's affairs; (2) the burden placed on the defendant in order to litigate in that forum; (3) the extent of any conflict with the sovereignty of the defendant's state; (4) the forum's state interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests; and (7) the existence of an alternative forum.  Id.

Here, as noted above, the first factor (extent of the defendant's purposeful involvement with the forum

1    state's affairs) weighs in favor of exercising personal

2    jurisdiction, as Defendant Sun Group made a conscious

3    decision and took intentional action to store its

4    material in California.  <u>See generally</u> FAC.

5        Next, the second factor (the burden placed on the

6    defendant to litigate in the forum state) weighs in

7    favor of exercising personal jurisdiction because

8    Defendant Sun Group does not allege any specific facts

9    that demonstrate a legitimate burden would be placed on

10    it if it was required to litigate this case in

11    California.  <u>Id.</u>  Instead, Defendant Sun Group tries to

12    use a global pandemic and the spontaneous nature of its

13    decision as a reason why it should not be required to

14    litigate in California.  <u>Id.</u>  As discussed, this is an

15    insufficient basis to decline exercising personal

16    jurisdiction.

17        The third factor (conflict with the sovereignty of

18    the defendant's state) weighs toward exercising personal

19    jurisdiction because Defendant Sun Group is based in

20    Florida and the exercise of personal jurisdiction in

21    California does not conflict with the sovereignty of

22    Florida.  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d

23    1316, 1323 (9th Cir. 1998) (stating that the exercise of

24    jurisdiction in California does not pose a conflict with

25    the sovereignty of Illinois).

26        The fourth factor (forum state's interest in

27    adjudicating the dispute) weighs in favor of exercising

28    personal jurisdiction over Defendant Sun Group.  Here,

the alleged breach of contract occurred in California,
as the payment owed was to be sent to Plaintiff in
California.  See generally FAC.  Additionally, the
services procured were performed by Plaintiff, a
California corporation, in the state of California.  Id.
Therefore, since California maintains an interest in
redressing the injuries of its citizens, this factor
favors exercising jurisdiction.  See GemCap Lending I,
LLC v. Quarles & Brady, LLP, No. 2:14-CV-07937-RSWL-E,
2015 WL 4914399, at *10 (C.D. Cal. Aug. 13, 2015)
("California has a strong interest adjudicating the
controversy [in question] because Plaintiff is a
resident of California and the alleged injury occurred
in California").

     The fifth factor (the most efficient judicial
resolution of the dispute) primarily focuses on the
location of the evidence and the witnesses.  Adv. Skin &
Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1091
(C.D. Cal. 2012).  Since Plaintiff filed this Action in
California, and since Plaintiff's warehouse located in
California is the source of the dispute, it is likely
that the evidence needed for adjudication is found in
this forum state.  To add, both Plaintiff and Defendant
have been litigating this case in California since April
2022.  Mot. 1:23-3:5.  Further, the parties have not
discussed any potential hardship witnesses may face if
this action were to proceed in California.  Accordingly,
this factor slightly favors exercising personal

jurisdiction, as resolving the matter in California would likely be more efficient than dismissing the case and forcing Plaintiff to commence a new action in Florida.

Likewise, the sixth factor (the importance of the forum to the plaintiff's interests in convenient and effective relief) also weighs in favor of exercising personal jurisdiction.  The injured Plaintiff has no ties to Florida, as it is a corporation residing in California that performed the services provided for in the contract in the state of California.  See generally FAC; see also PHD Mktg., Inc. v. Vital Pharms., Inc., No. CV 20-4417-RSWL-JCX, 2021 WL 8693518, at *5 (C.D. Cal. Mar. 3, 2021) ("The sixth factor weighs in [the plaintiff's] favor, as [the plaintiff] is a California-based entity with no significant presence in Florida.").  Additionally, it would be unreasonable to require the party alleging injury to travel across the country to litigate in Defendant Sun Group's forum state without Defendant Sun Group demonstrating a "compelling case" as to why the exercise of jurisdiction would "offend the notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 802

Lastly, the seventh factor (availability of an alternative forum) weighs against exercising personal jurisdiction.  Plaintiff carries the burden of proving the unavailability of an alternative forum.  Adv. Skin & Hair, 858 F. Supp. 2d at 1092 (internal citation

omitted).  Here, Plaintiff has not met its burden, as it has failed to demonstrate unavailability of an alternative forum.  See generally FAC, Opp'n; see also Adv. Skin & Hair, 858 F. Supp. 2d at 1092 (holding the final factor favored the defendant because the plaintiff, a California resident, had not demonstrated that Texas, where the defendant was located, was not a viable or available venue for litigating the case).  In this case, Florida could potentially be an alternative forum, even though it may be more costly or inconvenient. See generally FAC.  Therefore, this factor weighs in favor of Defendant Sun Group.

On balance, six factors weigh toward finding the exercise of personal jurisdiction reasonable, and one weighs against.  Thus, the Court's exercise of jurisdiction over Defendant Sun Group is reasonable.

The Court therefore **DENIES** the Defendants' motion to dismiss for lack of personal jurisdiction over Defendant Sun Group.

### 3.  12(b)(6)

Since the Court exercises personal jurisdiction over Defendant Sun Group, the Court must next assess whether Plaintiff has stated claims for relief against Defendant Sun Group.

#### a.  Breach of Contract

To plead a cause of action for breach of contract, a plaintiff must show (1) the existence of a contract; (2) plaintiff's performance or excuse for

nonperformance; (3) defendant's breach; and (4) that
plaintiff sustained damages resulting from the breach.
See Zamora v. Solar, No. 2:16-CV-01260-ODW-KS, 2016 WL
3512439, at *3 (C.D. Cal. June 27, 2016) (citing CDF
Firefighters v. Maldonado, 70 Cal. Rptr. 3d 667, 680
(2008)).

Plaintiff has stated a claim for breach of
contract.  Plaintiff states that it "entered into an
agreement with [Defendant] Sun Group" to provide
warehousing services.  FAC ¶ 14.  Next, Plaintiff
explains that it received Defendant Sun Group's
materials and stored the materials in its warehouse
pursuant to the agreement.  Id. ¶ 15.  Plaintiff
contends that Defendant Sun Group stopped paying
Plaintiff for their warehousing services in breach of
the agreement, and therefore Plaintiff sustained at
least $452,992.00 in damages.  Id.  Accordingly, the
Court **DENIES** Defendants' Motion to Dismiss Plaintiff's
breach of contract claim.

> b.  Open Book Account

An "open book account" is "an agreement, based on
prior transactions between the parties, that all items
of the account are true and that the balance struck is
due and owing from one party to the other." S.O.S.,
Inc. v. Payday, Inc., 886 F.2d 1081, 1091 (9th Cir.
1989); Trafton v. Youngblood, 69 Cal. 2d 17, 25 (1968).
The elements of an account stated are: "(1) previous
transactions between the parties establishing the

relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." Zinn v. Fred R. Bright Co., 271 Cal. App. 2d 597, 600 (1969); see Maggio, 196 Cal. App. 3d at 752-53.  Both parties must assent to the new amount owed in order to create an account stated.  See Hansen v. Fresno Jersey Farm Dairy Co., 220 Cal. 402, 408 (1934).  The agreement necessary to establish an account stated need not be express and may be implied from the circumstances.  See Hansen, 220 Cal. at 408.  If a statement is rendered to the debtor, and the debtor does not reply in a reasonable time, the law implies an agreement that the account is correct.  Maggio, Inc. v. McNeal, 196 Cal. App. 3d 745, 753 (1987); Zinn, 271 Cal.App.2d at 600. "[C]ourts require that the parties expressly intend to be bound because accruing debts under an express contract are not normally considered the subject of an open book account."  In re Roberts Farms, Inc., 980 F.2d 1248, 1252 n. 3 (9th Cir. 1992).  The "mere incidental keeping of accounts does not alone create a book account."  Maggio, Inc., 196 Cal. App. 3d at 752.

Plaintiff has adequately stated a claim for open book account.  Plaintiff states that the parties entered into an agreement for warehousing services wherein Defendant Sun Group was obligated to pay Plaintiff a monthly sum.  FAC ¶¶ 14-15.  Defendant Sun Group

initially paid Plaintiff, but later ceased paying despite Plaintiff's continued warehousing of Defendant Sun Group's materials.  Id.  Plaintiff provided Defendant Sun Group with invoices showing payments due, but Defendant Sun Group failed to pay.  FAC ¶ 15; Id., Ex. A, ECF No. 33-1.  Accordingly, if Defendant Sun Group did not expressly assent to the new amount owed, it impliedly did by way of its receipt of the invoices.  Thus, Plaintiff has stated a claim for open book account and the Court **DENIES** Defendants' Motion to Dismiss this claim.

      c.  Account Stated

     The elements of an account stated are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due."  Zinn v. Fred R. Bright Co., 271 Cal. App. 2d 597, 600 (1969).

     Here, Plaintiff has also stated a claim for account stated.  Plaintiff showed that its previous transactions with Defendant Sun Group established a debtor/creditor relationship because Defendant Sun Group agreed to pay Plaintiff for its services and Plaintiff issued invoices for those services.  FAC ¶¶ 14-15; Id., Ex. A.  The amount due was allegedly established in the agreement, and it was impliedly agreed upon by Defendant Sun

Group's failure to contest the invoices.  FAC ¶¶ 14-15.
Finally, Defendant Sun Group's failure to contest the
invoices also constitutes an implied promise to pay the
amount due.  Therefore, the Court **DENIES** Defendants'
Motion to Dismiss this claim.

       d.  <u>Quantum Meruit for Services Rendered</u>

"To prevail on a claim for quantum meruit,
[plaintiff] must show: (1) that he performed certain
services for [defendants]; (2) that the services were
rendered at [defendants'] request; and (3) that they are
unpaid.  <u>Swafford v. Int'l Bus. Machines Corp.</u>, 408 F.
Supp. 3d 1131, 1149 (N.D. Cal. 2019); <u>accord</u> <u>Haggerty v.
Warner</u>, 475, 252 P.2d 373, 377 (Cal. Ct. App. 1953).

Plaintiff has pled a quantum meruit claim.
Plaintiff states that it received and warehoused
Defendant Sun Group's materials after Defendant Sun
Group's representatives contacted Plaintiff and the
parties entered into an agreement for such services.
FAC ¶¶ 14-16.  Moreover, Plaintiff contends it was not
paid the full amount owed for its services.  <u>Id.</u>
Therefore, the Court **DENIES** Defendants' Motion to
Dismiss Plaintiff's quantum meruit claim.

///

///

///

///

///

///

### III.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss claims against Individual Defendants and **DENIES** Defendants' Motion to Dismiss claims Defendant Sun Group.

**IT IS SO ORDERED.**

DATED: April 13, 2023

/S/ RONALD S.W. LEW
_____

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge